# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LUCIA M. BOWMAN,** : | |
| Plaintiff : | **CIVIL ACTION NO. 3:04-2822** |
| v. : | **(CAPUTO, D.J.)** |
| | **(MANNION, M.J.)** |
| **JO ANNE B. BARNHART,** : | |
| **Commissioner of Social** | |
| **Security,** : | |
| Defendant : | |

## REPORT AND RECOMMENDATION

The record in this action has been reviewed pursuant to 42 U.S.C. § 405(g) to determine whether there is substantial evidence to support the Commissioner's decision to deny the plaintiff's claim for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). 42 U.S.C. §§ 401-433.

## I. Procedural Background

The plaintiff protectively filed an application for DIB on November 9, 1999, alleging disability since January 11, 1996 due to degenerative disc disease of the lumbar spine and lumbar radiculopathy. (TR. 39-41, 49).[1] The

---

[1] The plaintiff had previously filed applications for DIB alleging the same disability onset date, all of which were denied, on May 24, 1996, December 18, 1996, and August 7, 1998. (TR. 14).

plaintiff's claim was denied initially. (TR. 21-25). The plaintiff requested a hearing, which was held on April 27, 2001 before an administrative law judge ("ALJ"). (TR. 20, 29-30). The plaintiff, the plaintiff's husband, and a vocational expert ("VE") testified at the hearing. (TR. 187-219). The ALJ issued a July 16, 2001 decision denying the plaintiff's claims. (TR. 18-19).

The plaintiff filed a request for review of the ALJ's decision on August 13, 2001. (TR. 10). On October 29, 2004, the Appeals Council denied the request for review. (TR. 6-9). Thus, the ALJ's decision became the final decision of the Commissioner. 42 U.S.C. § 405(g).

Currently pending is the plaintiff's appeal, filed on December 30, 2004, of the Commissioner's decision. (Doc. No. 1).

## II. Disability Determination Process

A five-step process is required to determine if an applicant is disabled under the Act. The Commissioner must sequentially determine: (1) whether the applicant is engaged in substantial gainful activity; (2) whether the applicant has a severe impairment; (3) whether the applicant's impairment meets or equals a listed impairment; (4) whether the applicant's impairment prevents the applicant from doing past relevant work, and; (5) whether the applicant's impairment prevents the applicant from doing any other work. 20 C.F.R. § 404.1520.

The instant decision was ultimately decided at the fifth step of the process, when the ALJ concluded that, given the plaintiff's age, educational

background, work experience, and residual functional capacity ("RFC"), she was capable of making a successful adjustment to work that existed in significant numbers in the national economy. (TR. 18-19).

### III. The ALJ's decision

Because her date last insured ("DLI") was December 31, 2000, the plaintiff had to show that she has become disabled on or before that date. (TR. 14-15). 20 C.F.R. § 404.131(a). Accordingly, the ALJ focused on evidence relevant to that date. (TR. 15).

The ALJ noted that the plaintiff was a younger individual with more than a high school education. (TR. 17). The ALJ found the plaintiff's testimony regarding her limitations to be generally credible but decided that, given the plaintiff's level of activities, she had not shown that her symptoms were "so severe or continuous as to preclude all work." (TR. 17).

Using the above-outlined procedure, the ALJ determined that: 1) the plaintiff had not engaged in substantial gainful activity since January 11, 1996; 2) the plaintiff's degenerative disc disease of the lumbar spine and lumbar radiculopathy were "severe" under 20 C.F.R. § 404.1520(c), but; 3) the impairments did not meet or medically equaled any impairment listed in Appendix I, Subpart P, Regulations No. 4; 4) the plaintiff was precluded from performing her past relevant work as a nursing assistant, cashier, and medical assistant because all required a medium or higher level of exertion, and finally; 5) the plaintiff was not precluded from performing a range of light and

sedentary work, and therefore was capable of performing other work that existed in significant numbers in the national economy. (TR. 15-17).

With respect to step five, the ALJ found that the plaintiff's past relevant work had been performed at light, medium, and heavy levels of exertion but that the plaintiff's past relevant work skills were transferable only to sedentary work. (TR. 17). The ALJ found that the plaintiff was also capable, of a range of light work. (TR. 18). The ALJ found that the plaintiff could lift twenty pounds and retained the RFC for light and sedentary work, provided the work had a sit/stand option, did not require prolonged standing and/or walking, and required only occasional bending. (TR. 19).

The ALJ found that a significant number of jobs in the national economy existed which the plaintiff was capable of performing. Examples of such jobs were machine tender, machine packer, hand packer, receptionist, customer clerk, and service clerk. (TR. 18). The ALJ concluded that the plaintiff was not disabled at any time through her DLI. (TR. 18-19).

**IV. Evidence of Record**

The plaintiff was forty-five-years-old, a "younger" individual under the Act, at the time of the ALJ's decision. (TR. 17). 20 C.F.R. § 404.1563. She has a high school education, attended community college for one year, and has a medical assistant nursing certificate. (TR. 17, 191-192). The plaintiff has past work experience as a nursing assistant, a cashier/checker, and a medical assistant. (TR. 17, 192).

As noted above, the plaintiff had to show disability as of her DLI, December 31, 2000. (TR. 15). This is because a claimant is eligible for DIB only if the onset of the qualifying medical impairment was on or before her DLI. *Loza v. Apfel,* 219 F.3d 378, 394 (5th Cir. 2000). The government insists that this limits the evidence we should consider to pre-December 31, 2000. We find, however, that to the extent medical evidence from after that date further develops the picture of the plaintiff's relevant impairments, it should be considered. *See Mann v. Richardson,* 323 F.Supp. 175, 177 (S.D.N.Y. 1971) (holding that if subsequent impairments give a total picture of the plaintiff's medical condition, they should be considered); *DeNafo v. Gardner,* 272 F.Supp. 44, 46 (D.N.J.1967) (holding that subsequent events should be considered with prior medical evidence if they are corroborative or indicative of the true condition of claimant as of the DLI).

The plaintiff has not worked since January 1996. (TR. 39, 94, 192, 194). She began having back pains in November 1995, related to lifting heavy patients at work. This was exacerbated, in January 1996, by shoveling snow. (TR. 94, 194). The plaintiff saw her family physician, who gave her a muscle relaxant and pain medication. Her family doctor also wrote a note stating the plaintiff could return to her job but only perform light work. (TR. 194-95). Because the plaintiff's nursing assistant job did not have a light work option, she went on unemployment for one year. (TR. 195).

The plaintiff claims that, until this time, she took care of all the housework, but has since come to rely on her husband and children for

assistance. (TR. 197-98). The plaintiff's family moved from a three-story house to a one-floor apartment because of the plaintiff's difficulty with the stairs. (TR. 73, 201). She testified that she takes Tylenol four to six times a day for her pain and other medications for blood pressure. (TR. 196-97). The plaintiff also testified that she bought a "Craftmatic" bed but still has trouble sleeping at night and needs to lie down during the day. (TR. 199, 209).

The plaintiff's back treatment began with a series of three epidural injections which were administered from April 24 through May 29, 1996. (TR. 90-94). An April 16, 1996 lumbar spine MRI showed a small herniation on the right at L4-5, mild lumbar spondylosis at L5-S1, and mild spinal stenosis at L3-4. (TR. 141-42). The plaintiff's treating orthopedic specialist, Robert R. Kaneda, D.O., noted on February 3, 1997, that the plaintiff's subjective complaints were in excess of objective medical findings, including negative straight leg raising tests, a mild herniation at L4-5, a negative sitting root test,[2] and "evidence of a normal lumbar lordosis." (TR. 138). Dr. Kaneda recommended, and the plaintiff began, another series of epidural injections followed by a course of physical therapy. *Id.*

The plaintiff underwent her second set of epidural steroid injections from February 4, 1997 through March 5, 1997. (TR. 86-89). Upon evaluation by Dr. Keneda on May 9, 1997, the plaintiff reported feeling "much better" despite

---

[2]

A sitting root test is a sitting version of the straight leg raise test, which indicates radiculopathy or impingement. Family Practice Notebook.com, at http://www.fpnotebook.com/ORT108.htm.

overdoing it by scrubbing her floor.  (TR. 136).  By June 30, 1997, the plaintiff's "severe back complaints [we]re gone" and Dr. Kaneda discharged her from his care.  (TR. 136).

In April 1998, however, the plaintiff returned to Dr. Kaneda, reporting recurrent low back pain and left sacroiliac joint pain.  (TR. 133).  The plaintiff had negative straight leg raising and sitting root tests but decreased range of motion of the lumbar spine. *Id.* Dr. Kaneda injected the plaintiff's left sacroiliac joint and advised her to "continue with activities as tolerated and be rechecked in two months."  *Id.*  In June 1998, the plaintiff reported that she could "carry groceries home from the store for a couple of blocks."  *Id.*  A June 1998 x-ray of the plaintiff's lumbar spine showed no acute fractures or dislocations.  (TR. 132).  In November 1998, the plaintiff reported continued sacroiliac joint pain and Dr. Kaneda noted that she walked with an antalgic gait because of her pain.  (TR. 131).  Dr. Kaneda suggested decreased activity and more sacroiliac joint injections.  *Id.*

A December 17, 1998 lumbar spine MRI showed degenerative disc disease and mild to moderate L4-5 central canal stenosis. (TR. 81, 130).  Dr. Kaneda's treatment records from November 1998 through October 1999, however, consistently noted negative straight leg raising tests and negative sitting root signs. (TR. 128-33). In January 1999, Dr. Kaneda recommended epidural injections but told the plaintiff that she could return to work with certain limitations. (TR. 130).

The plaintiff returned to the pain clinic on January 29, 1999 for more

epidural steroid injections, to which the clinic reported that she had "responded well" in 1996 and 1997. (TR. 84). The plaintiff reported a week of pain relief on February 11, 1999, and did not receive another steroid injection until May 1, 2000. (TR. 83, 170). The plaintiff reported a fifty percent pain reduction from the May 1, 2000 injection but claimed that her pain had returned to its original intensity by July 12, 2000. (TR. 168-69).

Dr. Kaneda reviewed an updated MRI in March 2001, noting degenerative changes in the plaintiff's lumbosacral spine with some progression and foraminal narrowing at the L3-4 level. (TR. 155). After ordering and reviewing electrodiagnostic testing, which showed L4 and L5 radiculopathy, Dr. Kaneda recommended lumbar decompression. (TR. 154, 164). On May 10, 2001, a few weeks after her April 2001 hearing before the ALJ, the plaintiff underwent the lumbar decompression surgery. (TR. 185-86).[3]

The plaintiff tolerated the procedure well and on June 6, 2001, Dr. Kaneda reported that her gait and station were good. (TR. 183). By June 20, 2001, the plaintiff's "preoperative complaints of pain [we]re gone." *Id.* The plaintiff's range of motion of her lumbar spine was intact and she had negative straight leg raising and sitting root tests. (TR. 182). By August 2001, the plaintiff reported good and bad days, but her gait and station were normal and straight leg raises and sitting root tests were again negative. *Id.* In March

---

[3] The plaintiff presented her surgical records and post-operative records to the Appeals Council, which reviewed them. (TR. 9, 171-86).

2002, the plaintiff began complaining of pain on her left side, rather than her right. (TR. 181). The most recent medical records we have, from May 2002, indicated cervical degenerative disc disease, for which Dr. Kaneda recommended physical therapy. (TR. 176).

## V. Discussion

### A. Standard of Review.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only

>	unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The plaintiff contends that the ALJ erred by 1) not evaluating the testimony of her husband; 2) not specifying the time periods the plaintiff needed to alternate sitting and standing in her hypothetical to the VE; 3) relying on evidence from a statement not in the record, and; 4) not fully developing the record with respect to the plaintiff's post-hearing surgery.

**B.  Whether the ALJ erred by not evaluating the testimony of the plaintiff's husband.**

The plaintiff argues that the ALJ, in her decision, failed to address the testimony of the plaintiff's husband, Mr. Bowman. As the plaintiff points out, the ALJ referred to the fact that Mr. Bowman testified but did not discuss his testimony or evaluate his credibility. (TR. 15). The ALJ did, however, find the plaintiff herself "generally credible." (TR. 17).[4] The plaintiff argues that

---

[4]

We note that the Commissioner's brief and the plaintiff's reply brief both erroneously assume that the ALJ found the plaintiff not fully credible. The ALJ explicitly stated, however, that the plaintiff was "generally credible" but was, nevertheless, not precluded from performing all available work based on her "level of demonstrated activities." (TR. 17). Because the Commissioner's and

because the ALJ made no credibility finding with respect to Mr. Bowman, the ALJ must have rejected Mr. Bowman's testimony as not credible.

Without addressing whether this is necessarily true, we find that the relevant law the plaintiff cites is not on point. The plaintiff cites *Burnett v. Commissioner,* 220 F.3d 112, 122 (3d Cir. 2000), and *Van Horn v. Schweiker,* 717 F.2d 871, 873-4 (3d Cir. 1983), for the proposition that an ALJ must cite some reason for disregarding a lay witness's testimony. *Burnett* held that an ALJ erred by not addressing testimony from a lay witness that could potentially have bolstered the credibility of a claimant the ALJ found not credible. 220 F.3d at 122. Here, no bolstering was needed; the ALJ had already found the plaintiff credible. In *Van Horn,* the ALJ had failed to determine the credibility of the claimant, much less the credibility of the two lay witnesses who had testified on the claimant's behalf. 717 F.2d at 873-74. Because, in the present case, the ALJ found the plaintiff herself credible, it was not necessary to determine whether the plaintiff's husband's testimony had a bolstering effect.

**C. Whether the ALJ erred in not specifying, in her hypothetical to the VE, the time periods the plaintiff needed to alternate sitting and standing**.

The plaintiff argues that the ALJ failed to reconcile the finding that the plaintiff required a sit/stand option at work with the conclusion that the plaintiff could perform light or sedentary work. The plaintiff argues that by not

---

plaintiff rebuttal arguments both erroneously rely on the assumption that the ALJ found the plaintiff not credible, they are not on point.

11

specifying the amount of time the plaintiff needed to alternate sitting and standing, the ALJ did not provide the VE with enough information to address the plaintiff's hypothetical work limitations.

Specifically, the plaintiff argues that the ALJ failed to comply with Social Security Ruling ("SSR") 96-9p, which states that an "RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." 1996 WL 374185, *7. As the Commissioner notes, however, SSR 96-9p specifically pertains to situations where an ALJ determines that a claimant is capable of <u>less</u> than the full range of <u>sedentary</u> work.[5] Such specificity with regard to the RFC assessment is necessary because such a limited ability "reflects very serious limitations" bordering on disability. 1996 WL 374185, *1. In the present case, however, the ALJ determined that the plaintiff was capable of <u>light</u> <u>exertional</u> <u>work</u>, as well. Consequently, we find, as did the Commissioner, that SSR 83-12 applies.

Social Security Ruling 83-12 states that, where a claimant has a RFC

---

[5]

The plaintiff has, in her reply brief, cited *Gorham v. Barnhart*, 4-CV-02-2233 (M.D.P.A. Nov. 5, 2003), which adopted a Report & Recommendation that suggested that SSR 96-9p logically extended to <u>light work</u>. (Doc. No. 12 at 3, n.2). However the conclusion is, at best, *dicta* since no facts are applied to the bare statement that SSR 96-9p "also logically applies when the ALJ find that the plaintiff has the [RFC] for light work with a sit/stand option." Report & Recommendation, 4:02-CV-2233, 22-23. Additionally, the statement cites no supporting case law, nor can we find any. It is understandable why SSR 96-9p would apply to a <u>less than</u> full range of sedentary work, but it appears to this court not to be logical to extend that section to one who is capable of performing more than sedentary work. Here the plaintiff is capable of performing exertional work, albeit light exertional work.

12

"compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing," the claimant is capable of neither "the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) [n]or the prolonged standing or walking contemplated for most light work." 1983 WL 31253, *4. Yet, as SSR 83-12 notes, "[there are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice" and that "[i]f capable of transferring work skills to such jobs, [a claimant] would not be found disabled." *Id.* Social Security Ruling 83-12 does not require the ALJ to specify the exact time periods the claimant is capable of sitting or standing; in fact, it only advises consultation with a VE "in cases of unusual limitation of ability to sit or stand." *Id.* No unusual limitations were alleged here, nor were any found by the ALJ. Thus, we find that the ALJ did not err in failing to specify for the VE the time periods during which the plaintiff could sit or stand.

We do note, however, that SSR 83-12 recognizes that unskilled jobs, of which the ALJ found the plaintiff capable, "are particularly structured so that a person cannot ordinarily sit or stand at will." (TR. 18). 1983 WL 31253, *4. The ruling does not, however, compel an ALJ to conclude that a claimant who needs to alternate sitting and standing is incapable of unskilled light or sedentary work. 1983 WL 31253, *4. In the present case, the ALJ consulted a VE, who listed several light unskilled jobs where the plaintiff could sit and

stand within the work area. (TR. 216-17). According to the VE, the plaintiff would be capable of performing the listed jobs as long as she did not have to take breaks that would require her to "leave and not continue working" or "leave and lie down." (TR. 213-17). We conclude that the ALJ did not err by not specifying time limits on the plaintiff's sit/stand ability.

It is worth noting that the plaintiff herself did not propose specific time periods for alternating sitting and standing; instead her lawyer asked the VE if someone would be capable of performing the light work the VE had described if they "experience[d] numbness in [the] legs after sitting for up to an hour and then had to move around or whatever." (TR. 216). While the burden is on the Commissioner to demonstrate that other jobs exist in significant numbers in the national economy that the plaintiff is able to perform, the burden to present evidence about the extent of her disability is on the plaintiff. 20 C.F.R. §§ 404.1520(f), 404.1512(a),(c),(g).

### D. **Whether the ALJ improperly relied on evidence not in the record**.

The plaintiff argues that the ALJ improperly relied on an August 16, 1998 statement, not found in the record, in which the plaintiff allegedly listed her activities. The ALJ stated that she relied on this as evidence the plaintiff had performed such activities as vacuuming, shopping, visiting with relatives, cooking dinner, and helping with housework. (TR. 16).

At the hearing, in fact, the ALJ questioned the plaintiff about the

activities she had listed "[i]n '98, in one of the papers filed in (con)junction with this claim." (TR. 198). The activities about which the ALJ proceeded to ask the plaintiff correspond with the activities the ALJ referred to from the missing August 16, 1998 statement. (TR. 198-99). Significantly, the plaintiff's lawyer did not object to the ALJ's questions about the activities listed in the 1998 paper, and the plaintiff confirmed that she still belonged to book clubs, helped with vacuuming and cleaning, and shared cooking duties with her husband. *Id.* The only activity the plaintiff claimed to no longer perform was visiting and playing cards with relatives, although she testified she played "a lot of board games" with her husband. (TR. 198).

Because the record contains the plaintiff's sworn testimony about the aforementioned activities, evidence of those activities was in fact in the record, even if the August 1998 statement was not. It is apparent from the ALJ's decision that what mattered to the ALJ was the fact that the plaintiff performed those activities. (TR. 16). Because, as a result of the plaintiff's testimony, evidence the plaintiff had performed the aforementioned activities in 1998, and continued to do so at the time of the April 2001 hearing, is in the record, the fact that the August 1998 statement itself was missing from the record is, at best, harmless error.

**E.  Whether the ALJ failed to develop the record**.

The plaintiff argues that the ALJ erred in neither obtaining nor granting the plaintiff extra time to submit medical records from a surgery the plaintiff

15

underwent on May 10, 2001, two weeks after the April 2001 hearing. (TR. 185-86).[6] The plaintiff contends that the ALJ therefore did not fulfill her duty to develop the record.

The ALJ's responsibility was to develop the plaintiff's "complete medical history for at least the 12 months preceding the month" in which she filed her application. 20 C.F.R. § 404.1512 (d). The plaintiff's responsibility, on the other hand, was to present evidence supporting her disability claim. 20 C.F.R. § 404.1512(a). The burden of production was on the plaintiff, not the ALJ. 20 C.F.R. § 404.1512(a).

Medical records from the post-hearing surgery would therefore be considered new evidence and we will evaluate it as such. To merit a remand on the basis of new evidence, the plaintiff must show that the evidence is material and submit good cause for not presenting it at a prior proceeding. *Jones v. Sullivan*, 954 F.2d 125, 128 (3d. Cir. 1991). There is good cause because the surgery took place after the hearing, and surgery-related records obviously could not have been presented at the hearing. In addition, the plaintiff told the ALJ about her pending surgery and later presented the relevant records to the Appeals Council.

The medical records are not, however, material because they could not

---

[6] Despite the plaintiff's contention, while the ALJ and the plaintiff discussed the plaintiff's upcoming May 2002 surgery, the plaintiff never requested extra time to submit the related medical records to the ALJ. (TR. 190,196, 203-04). The plaintiff's lawyer confirmed that the ALJ had all the "relevant treatment records" at the hearing. (TR.190).

reasonably be expected to have changed the outcome of the ALJ's decision. *Szuback v. Sec'y of Health and Human Services*, 745 F.2d 831, 833 (3d Cir. 1984). They revealed nothing new about the state of the plaintiff's impairment as of December 31, 2000, her DLI, such as a previously missed diagnosis. (TR. 178). Instead, the records show that the plaintiff tolerated the surgery well and that it helped relieve her preoperative pain. (TR. 182-83). The plaintiff also continued to have negative straight leg raising and sitting root tests. (TR. 182). Remand is therefore not warranted.

We dismiss the Commissioner's argument that because the medical records concerning the plaintiff's May 2002 surgery occur after the DLI of December 31, 2000, they are irrelevant. (Doc. No. 11 at 14-15). As previously discussed, to the extent that later evidence further develops the picture of the plaintiff's relevant impairment, it can be considered for purposes of determining eligibility for DIB. *Mann,* 323 F.Supp. at 177; *DeNafo,* 272 F.Supp. at 46. Of course, the plaintiff must still be able to show disability as of the DLI of December 31, 2000. Accordingly, the medical records concerning the plaintiff's May 2002 surgery are relevant only to the extent that they clarify and develop her condition as of December 31, 2000. As noted above, part of why the records were not material was because they revealed nothing new about the state of the plaintiff's impairment as of December 31, 2000. (TR. 178). To the extent that the plaintiff contends that her post-operative lumbar MRI showed degenerative changes, such evidence is not relevant to determining whether the plaintiff was disabled as of December 31,

2000.  (Doc. No. 12 at 5-6).  (TR. 178).

## VI. RECOMMENDATION

Based on the foregoing, it is recommended that the plaintiff's appeal from the decision of the Commissioner of Social Security be **DENIED**.

S/ Malachy E. Mannion
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Dated: January 30, 2006**
O:\shared\REPORTS\2004 Reports\04-2822.01.wpd